MICHAEL J. HARTLEY (SBN #189375)
ANDREW E. PARIS (SBN #162562)
**ALSTON & BIRD LLP**
333 South Hope Street
Suite 1600
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Michael.Hartley@alston.com
Drew.Paris@alston.com

Attorneys for Plaintiffs

FILED
11 MAY -6 PM 1:51
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: ________

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MUELLER INDUSTRIES, INC., MUELLER STREAMLINE CO., and B&K INDUSTRIES, INC., Plaintiff, v. XIAMEN LOTA INTERNATIONAL CO., LTD, LOTA USA LLC, ALLEN WU, GRACE CHEN, and DOES 1-10, Defendants. | Case No. CV11-03922 JAK (SSx) **COMPLAINT FOR:** **1. CIVIL RICO VIOLATIONS (18 U.S.C. §1962(c))** **2. CIVIL RICO VIOLATIONS (18 U.S.C. §1962(d))** **3. CAL. UNFAIR COMPETITION LAW (CAL. BUS & PROF. CODE §17200)** **DEMAND FOR JURY TRIAL** |

Plaintiffs Mueller Industries, Inc. ("Mueller"), Mueller Streamline Co. ("Mueller Streamline") and B&K Industries, Inc. ("B&K") (collectively "Plaintiffs"), by and through their counsel, respectfully submit this Complaint against defendants Xiamen Lota International Co., Ltd. ("Xiamen Lota"), Lota USA LLC ("Lota USA"), Allen Wu ("Wu") and Grace Chen ("Chen") (collectively "Defendants").

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over Plaintiffs' RICO claims pursuant to 28 U.S.C. §1331, 18 U.S.C. §1961, and 18 U.S.C. §1964(a) and (c). The Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. §1367(a).

2. This Court has personal jurisdiction over Defendants pursuant to Cal. Code Civ. Proc. § 410.10 and 18 U.S.C. §1965. Defendants have purposefully directed their wrongful activities toward California, where a substantial portion of their wrongdoing occurred, and Plaintiffs' claims arise from Defendants' forum-related conduct. Lota USA has its principal place of business in California, Xiamen Lota has its North American headquarters in California, and both transact business in California. Among other California contacts, Xiamen Lota caused the shipment of tens of millions of dollars of its product to Plaintiffs through the Port of Long Beach, and Xiamen Lota delivered a significant portion of this product to Mueller Streamline's distribution center and warehouse in Ontario, California, where Plaintiffs resold this product to their California customers. Wu and Chen directed the activities of Xiamen Lota and Lota USA within the United States. As part of their wrongful course of conduct, they also committed significant torts against a California resident in California who suffered the harm from these torts in California. Defendants have these and other contacts with California sufficient for the Court to exercise personal jurisdiction over them consistent with traditional notions of fair play and substantial justice.

3. Alternatively, this Court has personal jurisdiction over Defendants Xiamen Lota, Wu and Chen pursuant to Fed. R. Civ. Proc. 4(k).

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and 18 U.S.C. §1965. Lota USA resides in this District, Xiamen Lota has its North American headquarters in this District, and a substantial part of the events or omissions giving rise to this Complaint occurred within this District.

**NATURE OF THE ACTION**

5. Plaintiffs bring this RICO and unfair competition action against Defendants for engaging in an illegal kickback scheme in which they secretly paid B&K's President, Peter Berkman ("Berkman"), to maintain Plaintiffs as a customer, to increase Plaintiffs' purchasing from Defendants, and to have Plaintiffs acquiesce to millions of dollars in excessive pricing for Xiamen Lota's plumbing products. Plaintiffs are seeking treble damages and attorneys' fees under 18 U.S.C. §§ 1962(c) and (d) and restitution under Cal. Bus. & Prof Code § 17203.

**PARTIES**

6. Plaintiff Mueller is a Delaware corporation with its principal place of business in Memphis, Tennessee.

7. Plaintiff B&K is an Illinois corporation with its principal place of business in Elk Grove Village, Illinois.

8. Plaintiff Mueller Streamline is a Delaware corporation with its principal place of business in Memphis, Tennessee.

9. Defendant Xiamen Lota is, on information and belief, a Chinese company with its principal place of business in Xiamen, China. Its North American headquarters are located in Los Angeles.

10. Defendant Lota USA is a Delaware limited liability company with its principal place of business in Los Angeles.

11. Defendant Wu is, on information and belief, a foreign national residing in China.

12. Defendant Chen is, on information and belief, a foreign national residing in China.

13. Plaintiffs are unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of the defendants named as Does 1 through 10, inclusive, and therefore are suing them under fictitious names. Each of the Doe defendants is in some way responsible for the wrongs alleged in this Complaint and is a legal cause of Plaintiffs' damages. Plaintiffs will amend their Complaint to allege the true names and capacities of each Doe defendant when ascertained. The references to "Defendants" herein include the Doe defendants.

## GENERAL ALLEGATIONS

### I. PLAINTIFFS ARE LEADING MANUFACTURERS AND DISTRIBUTORS OF PLUMBING PRODUCTS.

14. Mueller is a leading manufacturer of plumbing fixtures and products. Its operations are located throughout the United States and in Canada, Mexico, Great Britain and China. It is a public company (NYSE symbol: MLI).

15. B&K and Mueller Streamline are, directly or indirectly, wholly-owned subsidiaries of Mueller. They function together as an import distributor of plumbing products in the United States. They sell product to all channels of distribution, including hardware co-ops, home centers, plumbing wholesalers, and original equipment manufacturers.

16. Berkman was the President of B&K, an employee of Mueller Streamline, and an officer of Mueller. He was the executive ultimately responsible for Plaintiffs' purchasing from their import plumbing suppliers.

### II. THE LOTA GROUP WAS ONE OF PLAINTIFFS' LARGEST SUPPLIERS.

17. The Lota Group ("Lota Group" or "Lota") is a group of companies and persons controlled by or affiliated with Chinese businessman Wu and his long-time companion Chen. The Lota Group companies engage in various complementary

businesses and work together to maximize the Group's collective sales, revenues and profits. They have operated in this manner since at least 2003.

18. Xiamen Lota is one of the members of Lota. It is a large Chinese manufacturer of valves, faucets and other plumbing and hardware products. Wu is its controlling owner and CEO. Chen is its President.

19. Lota USA is another member company of Lota. It is the sales and marketing representative for Lota's products in the United States. Chen is its Managing Member and controlling owner.

20. Lota Group was one of Plaintiffs' suppliers of plumbing products from at least 1998 through 2008. Xiamen Lota shipped a substantial majority of its product to Plaintiffs in the United States through the Port of Long Beach in California. Xiamen Lota maintained control of the product until it was delivered to one of Plaintiffs' regional and master distribution centers, which are located in several states. Mueller Streamline maintained (and still maintains) a distribution center in Ontario, California where it received millions of dollars of Lota product. Once Plaintiffs received the product, they typically resold it to customers in the area. Product shipped to the Ontario warehouse was usually resold to Mueller's California customers.

## III. DEFENDANTS ENGAGED IN A SECRET KICKBACK SCHEME WITH B&K'S PRESIDENT, PETER BERKMAN.

21. In 2003, Defendants joined together with Peter Berkman in a secret kickback scheme that defrauded and injured Plaintiffs. Berkman agreed to misuse his position with Plaintiffs to maintain them as a customer of Defendants, to increase Plaintiffs' annual purchasing from Defendants, and to acquiesce to excessive pricing for Defendants' plumbing products. Defendants agreed to pay Berkman kickbacks for doing so.

**A. Berkman's Delivery of Plaintiffs' Business To Defendants.**

22. From April 2003 through August 2006, Berkman substantially increased Plaintiffs' purchasing from Defendants, ultimately causing Plaintiffs to purchase more than $80 million in product from Lota Group over that time period. Rather than diversifying Plaintiffs' supplier base, Berkman increased Lota's position so that it bordered on being Plaintiffs' sole supplier for valves and faucets, both significant business categories.

23. Berkman agreed to have Xiamen Lota ship the product "CFR" ("Cost and Freight"), meaning that Xiamen Lota invoiced Plaintiffs for the cost of transporting the goods from its factory in China to Mueller's distribution centers. These costs include customs duties required to be paid by the United States government. Berkman did so despite knowing that Plaintiffs would save a significant amount of money by purchasing the product "F.O.B." ("Free On Board"), meaning that Plaintiffs would take delivery in Xiamen, for example, and arrange for their own shipping to the United States. Berkman allowed Xiamen Lota to pocket these additional revenues, which totaled several million dollars, at Plaintiffs' expense.

24. Berkman acquiesced to millions in improperly inflated pricing for Lota product between January and August 2006. This was a time period immediately before Berkman left Plaintiffs to pursue his own business (Homewerks Worldwide, LLC ("Homewerks")) in competition with Plaintiffs. The inflated pricing, coupled with increased purchases and single-sourcing, impaired Plaintiffs' initial ability to compete with Homewerks in the marketplace.

25. Defendants issued dozens of written invoices to Plaintiffs between 2003 and August 2006 in furtherance of the above efforts by Berkman to direct business to, and accept excessive pricing from, Defendants. Berkman caused Plaintiffs to pay those invoices without their knowledge of his secret arrangement with Defendants.

26. Plaintiffs also paid significant salary and bonuses to Berkman over

the same time period, which they would not have done had they known of his secret arrangement with Defendants.

**B. Defendants' Initial Payments To Berkman Via A Direct Interest In Lota USA**

27. Xiamen Lota, Chen and Wu initially gave Berkman a 10% interest in Lota USA when it was formed in 2003. They did so in return for a nominal payment of $5,000.

28. That interest entitled Berkman to share in Lota USA ownership distributions. It also gave Berkman valuable cash-out rights, guaranteed by Xiamen Lota, should Lota Group be sold.

29. In January 2005, Berkman received his first ownership distributions. There were two smaller distributions that came directly from Lota USA. There was also a larger payment of $313,514 that Xiamen Lota, Wu and Chen separately directed to Berkman.

**C. Defendants' Sham Redemption of Berkman's Interest**

30. The payment process changed shortly thereafter, after Lota USA's U.S.-based CEO, Nicholas Moss ("Moss") became aware that Plaintiffs had not approved Berkman's ownership interest in Lota USA.

31. Moss, a 20% owner of Lota USA, had known that Berkman had an interest in Lota USA. But he thought that Plaintiffs had approved it. Berkman had falsely represented to Moss that the interest had been fully disclosed to Plaintiffs and that they had approved it as way of supporting a strategic relationship with a key supplier. Plaintiffs were not aware of the interest and would not have approved it had they known.

32. In late 2004 or early 2005, Berkman admitted to Moss that Berkman's interest had not been disclosed to or approved by Plaintiffs and that they were not aware of it. Moss demanded that Berkman's ownership interest be redeemed immediately.

33. Lota USA subsequently redeemed Berkman's interest in the company and returned Berkman's $5,000 investment. Berkman returned the approximately $60,000 he received in direct distributions from Lota USA. Berkman did not, however, return the larger $313,514 payment that he received, and Moss was not aware that he retained it.

34. On information and belief, the redemption was a paper deal only. Despite the supposed undoing of his ownership interest, Berkman secretly maintained his 10% interest in the company under a side-deal with Defendants that was negotiated by Chen and Wu without Moss' knowledge.

35. On information and belief, under the terms of the deal, Berkman would continue to deliver Plaintiffs as a customer and would acquiesce to the Lota Group's product pricing. In return, he would continue to be entitled to the same distributions and cash-out rights as if he were still a documented owner of Lota USA. The amounts would either be paid out secretly, outside of the Lota USA payment structure, while Berkman remained employed by Plaintiffs, or they would accrue and be paid out after Berkman left the company.

**D. <u>Defendants' Attempts to Force Moss To Pay Berkman</u>**

36. Berkman left Plaintiffs to form his new company, Homewerks, in August 2006. On information and belief, in the ensuing months, Wu and Chen both considered options for directing money to Berkman.

37. At the same time, the Lota Group was in discussions to be acquired by a third party. A memorandum of understanding was signed, and the parties had become serious enough that by mid-November 2006, a deal was becoming increasingly imminent.

38. On November 27, 2006, on a phone call with Moss in Los Angeles to discuss various aspects of the deal, Lota USA and Xiamen Lota (through Chen and at Wu's direction) demanded that Moss pay Berkman $3 million, as if Berkman were still an owner of Lota USA. They demanded that Moss do so from Moss' own

proceeds from the sale, or else Moss would not be paid. Moss refused, and Lota USA terminated him a few weeks later.[1]

## IV. PLAINTIFFS' DISCOVERY OF THE KICKBACK SCHEME

39. Plaintiffs were not aware of Berkman's secret interest in, or receipt of payments from, Defendants, nor, despite reasonable diligence, would a reasonable inquiry have revealed it. Berkman did not seek or obtain Plaintiffs' approval for the Lota USA ownership interest or the kickback payments, or otherwise disclose these facts to Plaintiffs. Plaintiffs would not have approved or permitted the ownership interest or payments had they known.

40. Defendants, together with Berkman, also affirmatively mislead Plaintiffs and took great lengths to hide the kickback scheme from Plaintiffs. Among other things:

(a) Berkman and Defendants primarily corresponded using various email accounts that Berkman maintained outside his business at B&K.

(b) Berkman held his ownership interest in the name of Woodland Investment Partners LLC ("Woodland"), an LLC he controlled, so that his name would not appear in Lota USA documents.

(c) Berkman intentionally failed to identify, and fraudulently concealed, his relationship with Lota or Lota USA in response to a 2006 questionnaire by Plaintiffs that required him to disclose additional business relationships, payments received from third parties, and any ownership interest in another company besides Mueller and B&K.

(d) After Berkman left B&K, Defendants (through Chen and Wu) falsely claimed that they had no relationship with Berkman of any kind and that they were loyal to Plaintiffs. Mueller's then-CEO, William O'Hagan, and current CEO,

---

[1] Moss subsequently sued Lota USA for wrongful termination in violation of public policy (termination for refusing to pay a bribe). Moss prevailed on the claim and the arbitrator, a retired federal magistrate judge, made detailed findings regarding the conduct at issue.

Greg Christopher, had traveled to China in October 2006, several months after Berkman's departure from Plaintiffs, as part of a review of the company's supply structure. In a meeting with Chen and Wu, they asked whether Defendants were also supplying Berkman's company Homewerks. They claimed that they were not, and misrepresented that they had no relationship with Berkman of any kind.

41. Plaintiffs only became aware of the kickback scheme, and their injuries from Defendants, when Moss disclosed Berkman's ownership interest in Lota USA to Plaintiffs on May 10, 2007.[2]

42. Moss needed confirmation, for his own arbitration proceedings against Defendants (see footnote 1), regarding whether Plaintiffs had been aware of Berkman's interest. He therefore gave Defendants notice that he would be disclosing the interest and did so on May 10, 2007.

43. Plaintiffs sued Berkman and Homewerks shortly thereafter, and recently obtained a settlement for injuries Plaintiffs suffered through December 2010. Plaintiffs are now seeking to recover the past and continuing damages owed by Defendants for their part in the kickback scheme.

## FIRST CAUSE OF ACTION

## (VIOLATION OF 18 U.S.C. §1962(C) – ALL DEFENDANTS)

44. Plaintiffs reassert and incorporate by reference the allegations set forth in paragraphs 1-43 as though fully set forth herein.

45. The Lota Group is an association-in-fact "enterprise" as defined in 18 U.S.C. §1961(4). Its constituent companies and persons, including Defendants, have a common purpose in maximizing their collective sales, revenues and profits. They function as an ongoing organization, marketed and promoted together as the "Lota Group," with an established structure provided by their various written agreements, integrated operations, shared leadership and closely-linked ownership

---

[2] In a somewhat ironic twist, Plaintiffs retained Moss, a well-known industry executive, shortly after he was terminated by Lota USA. He now holds Peter Berkman's former position.

(Chen and Wu). They have operated as a continuing unit for the last eight years.

46. The Lota Group is engaged in, and its activities affect, interstate and foreign commerce.

47. Defendants are "persons" as defined in 18 U.S.C. §1961(3).

48. Defendants are constituent companies of the Lota Group, or persons affiliated with it, and therefore are associated with the Lota Group.

49. Defendants knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the affairs of the Lota Group. Xiamen Lota was responsible for designing, manufacturing and pricing the product sold by the Lota Group. Lota USA was responsible for promoting, marketing, soliciting orders, and providing customer support for the Lota Group's products in North America. Wu and Chen directed and controlled the activities of both companies and the Lota Group as a whole.

50. Defendants knowingly and willingly conducted or participated, directly or indirectly, in the conduct of the Lota Group's affairs through a pattern of racketeering activity.

a. Defendants committed multiple acts of commercial bribery punishable by prison terms of more than 1 year under California Penal Code §641.3 (the state where Lota USA resides) and Illinois Penal Code Section 720 ILCS 5/§29A-1 (the state where Berkman resides). Defendants offered and/or gave Berkman, an employee of Plaintiffs, money and other things of value, without Plaintiffs' knowledge or consent, in return for Berkman's agreement to use his position at B&K to influence sourcing and pricing decisions for Defendants' benefit. The individual violations included the grant to Berkman of a 10% interest in Lota USA, the ownership distributions to Berkman, and the promises of further payments to Berkman in return for delivering Plaintiffs' business.

b. Defendants committed dozens of acts of honest services mail and wire fraud in violation of 18 U.S.C. §§1341, 1343, and 1346. Defendants devised and

knowingly participated in a scheme or plan to deprive Plaintiffs of their right to Berkman's honest services; the scheme or plan consisted of their payment of kickbacks to Berkman in exchange for him using his position to influence Plaintiffs' sourcing and pricing decisions; Defendants acted with the intent to defraud plaintiffs; their payments to Berkman were material and capable of influencing his decisions; and they used the mails, private commercial carriers, and wire (emails, faxes and telephone) to carry out or attempt to carry out the scheme or plan. By way of example, each of the dozens of price quotes and invoices that Defendants caused to be sent to Plaintiffs, to effectuate Berkman's compromised purchasing decisions, are separate honest services offenses.

c. Defendants likewise committed dozens of acts of mail and wire fraud in a scheme to defraud and to obtain money by means of false or fraudulent pretenses in violation of 18 U.S.C. §§1341 and 1343. Defendants devised and knowingly participated in a scheme or plan to overcharge Plaintiffs for the product they were purchasing; the scheme or plan consisted of their payment of kickbacks to Berkman in exchange for him using his position to acquiesce to Defendants' excessive pricing; the statements that Defendants made regarding price contained material omissions, in that they failed to disclose Defendants' secret relationship with Berkman, the decisionmaker regarding the invoices; Defendants acted with the intent to defraud; and Defendants used the mails, private commercial carriers, and wire (email, faxes and telephone) to carry out or attempt to carry out the scheme or plan. By way of example, each of the dozens of price quotes and invoices that Defendants caused to be sent to Plaintiffs, to effectuate Berkman's acquiescence to Defendants' overcharges, are separate mail and wire fraud offenses.

d. The above predicate offenses took place from approximately 2003 through 2006, within ten years of each other, and were part of a common scheme by Defendants to defraud and injure Plaintiffs and illicitly benefit Defendants and others. They therefore constitute a "pattern" of racketeering.

e. Defendants participated in this pattern of racketeering activity as "principals," in that they knowingly and willfully committed, and/or knowingly and willfully aided and abetted each other (or others) in committing, the above predicate offenses, and knowingly and willfully received income derived, directly or indirectly, from it. Xiamen Lota received income in the form of revenues from the sale of products and increased prices to Plaintiffs. Lota USA received income in the form of commissions on revenues earned by Xiamen Lota. Wu and Chen received income from both companies and from the Lota Group as a whole.

f. Defendants' association with the Lota Group facilitated their commission of the above predicate offenses.

g. The offenses had a direct or indirect effect on Lota Group.

51. Plaintiffs have been injured in their business or property by reason of Defendants' violations of 18 U.S.C. §1962(c). Plaintiffs' damages include, but are not limited to, losses incurred by Plaintiffs from doing business with Lota Group as opposed to other suppliers, losses incurred as a result of the improper prices that were agreed to, losses from the increased prices for product delivery C.F.R. as opposed to F.O.B., and losses incurred as a result of the lost value of Peter Berkman's honest services during the time of the kickback scheme (including all salary and bonuses, including executive benefits and fringe expenses paid to Peter Berkman).

52. Defendants are entitled to mandatory trebling of their damages and their costs of suit, including reasonable attorneys' fees.

**<u>SECOND CAUSE OF ACTION</u>**

**(VIOLATION OF 18 U.S.C. §1962(D) – ALL DEFENDANTS)**

53. Plaintiffs reassert and incorporate by reference the allegations set forth in paragraphs 1-52 as though fully set forth herein.

54. Defendants agreed to participate in the affairs of the Lota Group through the commission of two or more predicate acts by either of them. Defendants agreed to commit several acts of bribery, and dozens of acts of wire fraud, mail fraud

and honest services fraud, and in fact did so, along with other overt acts in furtherance of the conspiracy.

55. Defendants therefore have conspired to violate 18 U.S.C. §§1962(c), in violation of 18 U.S.C. §1962(d).

56. Plaintiffs have been injured in their business or property by reason of Defendants' violation of 18 U.S.C. §1962(d). Plaintiffs' damages include, but are not limited to losses incurred by Plaintiffs from doing business with Lota Group as opposed to other suppliers, losses incurred as a result of the improper prices that were agreed to, losses from the increased prices for the product delivery C.F.R. as opposed to F.O.B., and losses incurred as a result of the lost value of Peter Berkman's honest services during the time of the bribery scheme (including all salary and bonuses, including executive benefits and fringe expenses paid to Peter Berkman).

57. Plaintiffs are entitled to mandatory trebling of their damages and costs of suit, including reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**

**(VIOLATION OF CAL. BUS. & PROF. CODE §17200 – ALL DEFENDANTS)**

58. Plaintiffs reassert and incorporate by reference the allegations set forth in paragraphs 1-59 as though fully set forth herein.

59. As alleged herein, Plaintiffs have suffered injury in fact and lost money or property as a result of Defendants' conduct.

60. The Unfair Competition Law, California Business & Profession Code §17200 *et seq*. prohibits any "unlawful," "fraudulent" or "unfair" business act or practice. In the course of conducting business, Defendants committed unlawful business practices, including violations of the RICO statute, 18 U.S.C. §1961, and those illegal acts set forth in Paragraph 52 above.

61. Plaintiffs reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

62. Defendants' actions also constitute "unfair" business acts or

practices because Defendants' bribery, misrepresentations, and sales of product to Plaintiffs at excessive prices violate and offend the public policy against engaging in unfair competition and deceptive conduct, and are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiffs. These acts caused harm to Plaintiffs that outweigh any utility flowing from them, and Plaintiffs could not reasonably have avoided the harm. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

63. Moreover, Defendants' policies and practices are inconsistent with the legislatively-declared policies embodied in 18 U.S.C. §1961, 18 U.S.C. §§1341, 1343, and 1346, California Penal Code §641.3 and Illinois Penal Code Section 720 ILCS 5/§29A-1.

64. Defendants' actions, practices, policies nondisclosures, and misleading statements, as alleged in this Complaint, also constitutes "fraudulent" business acts or practices because they were false, misleading and likely to deceive the public within the meaning of the UCL.

65. Plaintiffs have in fact been deceived as a result of their reliance on Defendants' representations and omissions. This reliance has caused harm to Plaintiffs and caused them to suffer injury in fact and lose money.

66. As a result of its deception, Defendants have been able to reap unjust and unearned revenue and profit from the sales of product and shipping services to Plaintiffs.

67. Plaintiffs seek restitution and disgorgement of all money obtained from Plaintiff as result of the unfair competition and all other relief this Court deems appropriate, consistent with Cal. Bus. & Prof. Code § 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For general and special damages according to proof at trial;
2. For statutory trebling of damages;
3. For restitution according to proof at trial;
4. For prejudgment interest at the applicable rate;
5. For attorneys' fees and costs of suit; and
6. For such other relief as the Court deems just and proper.

DATED: May 6, 2011

MICHAEL J. HARTLEY
ANDREW E. PARIS
**ALSTON & BIRD LLP**

Michael J. Hartley
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all claims and issues so triable.

DATED: May 6, 2011

MICHAEL J. HARTLEY
ANDREW E. PARIS
**ALSTON & BIRD LLP**

Michael J. Hartley
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John Kronstadt and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

**CV11- 3922 JAK (SSx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

CENTRAL DISTRICT OF CALIFORNIA

MUELLER INDUSTRIES, INC., MUELLER STREAMLINE CO., and B&K INDUSTRIES, INC.

*Plaintiff*

v.

XIAMEN LOTA INTERNATIONAL CO., LTD, LOTA USA LLC, ALLEN WU, GRACE CHEN, and DOES 1-10

*Defendant*

Civil Action No. CV11-03922JAK(SSx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Michael J. Hartley (SBN #189375)
Andrew E. Paris (SBN #162562)
ALSTON & BIRD LLP
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

JULIE PRADO

SEAL

Date: MAY - 6 2011

*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
MUELLER INDUSTRIES, INC., MUELLER STREAMLINE CO., and B&K INDUSTRIES, INC.

**DEFENDANTS**
XIAMEN LOTA INTERNATIONAL CO., LTD, LOTA USA LLC, ALLEN WU, GRACE CHEN, and DOES 1-10

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Michael J. Hartley (SBN #189375)
Andrew E. Paris (SBN #162562)
ALSTON & BIRD LLP
333 S. Hope Street, 16th Floor, Los Angeles, CA 90071
Telephone: 213-576-1000; Facsimile: 213-576-1100

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT: $** ____________

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 (c) and (d)

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☒ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 22 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R.& Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 61 HIA(1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW 405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

CV11-03922

**FOR OFFICE USE ONLY:** Case Number: ____________

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**



American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | MUELLER INDUSTRIES, INC. - Tennessee<br>MUELLER STREAMLINE CO. - Tennessee<br>B&K INDUSTRIES, INC. - Illinois |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOTA USA LLC - Los Angeles County | XIAMEN LOTA INTERNATIONAL CO., LTD - China<br>ALLEN WU - China<br>GRACE CHEN - China |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| RICO, 18 U.S.C. §§ 1962 (c) and (d) - Los Angeles County<br>Unfair Competition Law, Bus. & Prof. Code, Sec. 17200 - Los Angeles County | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note:** In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** 5/6/11
Michael J. Hartley

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)



American LegalNet, Inc.
www.FormsWorkflow.com

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |



American LegalNet, Inc.
www.FormsWorkflow.com